## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) |
| | ) |
| Plaintiff/Judgment Creditor/Garnishor, | ) |
| | ) |
| v. | ) |
| | ) |
| MAC MEETINGS & EVENTS, LLC, et al., | )    Case No. 4:18-CV-1967-SPM |
| | ) |
| Defendants/Judgment Debtors, and | ) |
| | ) |
| CISCO SYSTEMS, INC., | ) |
| Garnishee. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Cisco Systems, Inc.'s Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Doc. 45). The motion has been fully briefed. All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 31). For the following reasons, the motion will be granted.

### I.    BACKGROUND

On November 21, 2018, Plaintiff PNC Bank, National Association ("PNC") filed a complaint against Defendants MAC Meetings & Events, LLC ("MAC Meetings") and 801 N Second Street, LLC ("801 N. Second St."), alleging that Defendants owed Plaintiff money based on an unpaid note and a breached credit card agreement. (Doc. 1). On December 21, 2018, this Court entered a Final Consent Judgment in favor of PNC, and against Defendants, in the amount of $4,142,067.39. (Doc. 12).

1

In an attempt to collect on its judgment against Defendants, PNC served a third party, Garnishee Cisco Systems, Inc. ("Cisco"), with garnishment interrogatories, pursuant to Federal Rule of Civil Procedure 69 and Rule 90.13 of the Missouri Supreme Court Rules. (Doc. 16-3). In its answers to those garnishment interrogatories, Cisco denied owing any debt to MAC Meetings. (Doc. 19). PNC then filed Exceptions and Objection to the Answers to the Garnishment Interrogatories (the "Exceptions"). (Doc. 20). In those Exceptions, PNC alleged that Cisco currently owes MAC Meetings in excess of $9 million in unpaid compensation, fees, charges, and unreimbursed expenses related to meeting and event planning services MAC Meetings provided to Cisco.

After Cisco moved to dismiss the Exceptions, the Court, acting *sua sponte*, raised questions regarding its subject matter jurisdiction over the garnishment action and requested supplemental briefing on the issue of subject matter jurisdiction. (Doc. 32). PNC filed a brief in which it argued that the Court has subject matter jurisdiction over this action pursuant to its ancillary enforcement jurisdiction and that the Court also has original and independent subject matter jurisdiction over the garnishment proceeding pursuant to 28 U.S.C. § 1332(a)(1), because there is a diversity of citizenship between the PNC and Cisco and the amount in controversy exceeds $75,000. (Doc. 34). Cisco submitted a brief in which it argued that the Court does not have ancillary enforcement jurisdiction over the garnishment action and that PNC had not satisfied its burden of showing an independent basis for subject matter jurisdiction in light of the absence of jurisdictional allegations in the Exceptions. (Doc. 33).

PNC subsequently requested, and was granted, leave to file amended exceptions and objections to the answers to garnishment interrogatories to address jurisdictional issues and issues raised by Cisco in its previously-filed motion to dismiss. (Doc. 37). After PNC filed amended exceptions and the Court identified a deficiency in the allegations regarding citizenship, PNC filed its Second Amended Exceptions and Exceptions to Garnishment Interrogatories Submitted on

Behalf of Garnishee Cisco Systems, Inc. (the "Second Amended Exceptions"). (Doc. 41). In light of the filing of the Second Amended Exceptions, the Court denied Cisco's prior motion to dismiss as moot.

In the Second Amended Exceptions, PNC alleges that it is a national banking association with its main office in Delaware, and that it is therefore a citizen of Delaware for purposes of 28 U.S.C. §§ 1332(a)(1) and 1348. (Second Am. Exceptions, Doc. 41, at ¶ 1). PNC alleges that Cisco is a corporation organized under the laws of California, with its principal place of business in California, and is therefore a citizen of the State of California for purposes of 28 U.S.C. § 1332(a)(1). (*Id.* at ¶ 3). It alleges that MAC Meetings is a limited liability company organized under the laws of the State of Missouri; that MAC Meetings' members consist of two individual citizens of Missouri and one individual citizen of Illinois; and that MAC Meetings therefore a citizen of Missouri and Illinois. (*Id.* at ¶ 4). It also alleges that 801 N. Second Street is a limited liability company organized under the laws of the State of New York; that its members are MAC Meetings and an individual who is a citizen of New York; and that 801 N. Second Street is therefore a citizen of Missouri, Illinois, and New York. (*Id.* at ¶ 5).

As it did in the original Exceptions, PNC takes exception and objects to Cisco's answers to garnishment interrogatories to the extent that Cisco asserts that it is not indebted to MAC Meetings. (*Id.* at ¶ 23). PNC alleges the following: Over a period of over fifteen years, MAC Meetings performed meeting and event planning services for Cisco, pursuant to or in accordance with certain written, oral, and/or implied agreements, under which Cisco agreed to compensate MAC Meetings and reimburse MAC Meetings for certain expenses incurred. (*Id.* at ¶ 11). PNC identifies several specific written agreements between Cisco and MAC Meetings related to the meeting and event planning services, including a Services Agreement dated November 1, 2001, and an Outsourcing Agreement dated October 27, 2006, as amended in 2007 and 2009, as well as various purchase orders, statement of work forms, and service request forms. (*Id.* at ¶ 12).

The Services Agreement and the Outsourcing Agreement (collectively, the "Agreements") are attached as exhibits to the Second Amended Exceptions. The Services Agreement states that it is made between Cisco and MAC Meetings. (Ex. A-1 to Second Am. Exceptions ("Services Agreement") at p.1). The Services Agreement includes a clause stating, *inter alia*:

> The sole jurisdiction and venue for all disputes relating to this Agreement shall be the California State Courts for the County of Santa Clara and the U.S. Federal Courts for the Northern District of California and the parties hereby consent to the jurisdiction of such courts and waive all venue objections.

(*Id.* at § 16.3). The Outsourcing Agreement also states that it is entered into between Cisco and MAC Meetings. (Ex. A-2 to Second Am. Exceptions ("Outsourcing Agreement"), at p. 1). The Outsourcing Agreement includes a clause stating, *inter alia*,

> The exclusive jurisdiction and venue of any action with respect to the subject matter of this Agreement shall be the state courts of the State of California for the County of Santa Clara or the United States District Court for the Northern District of California. Each of the parties hereto submits itself to the exclusive jurisdiction and venue of such courts for the purpose of any such action.

(*Id.* at § 18).

In the Second Amended Exceptions, PNC alleges that MAC Meetings has performed various meeting and event planning services for Cisco for which Cisco has failed to properly compensate and/or reimburse MAC Meetings. (Second Am. Exceptions, at ¶ 13). MAC Meetings retained an outside consultant to conduct an independent analysis of the total indebtedness owed to MAC Meetings by Cisco, and the consultant concluded that MAC Meetings is owed at least $9,835,016.00 by Cisco. (*Id.* at ¶ 14). In mid-December, MAC Meetings forwarded a copy of the audit to Cisco, along with documents relied on by the consultant. (*Id.* at ¶ 15). Over the next nine months, representatives of MAC Meetings and Cisco engaged in discussions in an effort to reach a mutual agreement on the alleged indebtedness, but in August 2018, Cisco broke off communications. (*Id.* at ¶¶ 16-17). PNC asserts six claims in its Second Amended Exceptions: (1)

Breach of Written Contract; (2) Breach of Oral Contract; (3) Breach of Implied Contract; (4) Action on Account; (5) Quantum Meruit; and (6) Unjust Enrichment.

On January 8, 2020, Cisco filed the instant Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 45), along with a motion to stay proceedings pending the Court's decision on the motion to transfer venue (Doc. 47). The Court granted the motion to stay. (Doc. 53). PNC subsequently filed a memorandum in opposition to the motion to transfer venue (Doc. 54), and Cisco filed a reply (Doc. 60).

## II.   SUBJECT MATTER JURISDICTION

The Court will first address the question of whether it has subject matter jurisdiction over this garnishment action. "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[J]urisdiction issues will be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking, even if the parties concede the issue." *Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 923 (8th Cir. 2006) (quoting *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991)). The Court previously raised concerns about its subject matter jurisdiction, noting an apparent split in authority regarding whether a federal court's ancillary jurisdiction to enforce its own judgments extends to a garnishment proceeding that—like this one-—involves substantial disputed questions of fact and/or law that are completely unrelated to the original lawsuit, such that the garnishment proceeding appears to be entirely new case.

After review of the parties' briefs and PNC's amended pleadings, the Court finds that it need not reach the difficult and close question of whether this Court's ancillary jurisdiction extends to the garnishment action, because this Court has jurisdiction over the garnishment action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). To invoke diversity jurisdiction, the parties must be citizens of different states, and the amount in controversy must exceed $75,000.

28 U.S.C. § 1332(a). For purposes of determining whether diversity of citizenship exists in a garnishment action, the relevant citizenship is that of the garnishor and garnishee. *See Monroe v. Rodder*, 583 F. Supp. 2d 1031, 1034 (E.D. Mo. 2008) (finding diversity of citizenship for purposes of § 1332(a)(1) and § 1441 in a removed garnishment proceeding, because the garnishor and garnishee were citizens of a different states; finding irrelevant the citizenship of the judgment debtor); *Grissom v. Welker*, No. 1:10-CV-144 RWS, 2011 WL 845285, at \*2 (E.D. Mo. March 9, 2011) (same). It is undisputed that the amount in controversy in this garnishment action is well over $75,000. Although PNC did not adequately allege the citizenship of the parties for purposes of establishing diversity jurisdiction in its initial Exceptions, it does so in the Second Amended Exceptions. PNC alleges that it is a citizen of Delaware and that Cisco is a citizen of California.[1] Because the garnishor and garnishee are citizens of different states and the amount in controversy exceeds $75,000, this Court has jurisdiction over the garnishment action under § 1332(a)(1).

III.   **MOTION TO TRANSFER VENUE**

A.  **The Instant Garnishment Proceedings Are Subject to a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**

In the instant motion, Cisco asks the Court to transfer PNC's garnishment proceedings against it to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a) and the forum selection clauses in the Agreements. The first disputed question the Court must resolve is whether post-judgment garnishment proceedings brought by a judgment creditor/garnishor under Federal Rule of Civil Procedure 69(a) are subject to transfer of venue under § 1404(a). Section 1404(a) states, in relevant part:

(1) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[1]  Even if the citizenship of the judgment debtor were relevant here, it would not affect the diversity analysis. PNC alleges that MAC Meetings is a citizen of Missouri and Illinois; thus, MAC Meetings is not a citizen of the same state as either PNC or Cisco. (Second Am. Exceptions ¶ 4).

28 U.S.C. § 1404(a). As Cisco correctly points out, the Supreme Court has held that "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013). Noting that courts apply federal procedural rules in a diversity action, *see Ashley Cty., Ark. v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009), Cisco argues that section 1404(a) is a federal judicial housekeeping statute and applies in this diversity case.

PNC, on the other hand, argues that § 1404(a) does not apply in this case, because this is a garnishment proceeding brought pursuant to Rule 69(a), which states:

> (1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. **The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located,** but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a) (emphasis added). PNC argues that state procedural law applies, not federal procedural statutes. PNC further argues that § 1404(a) is not one of the "federal statute[s]" specifically mentioned in Rule 69(a), because that term refers only to a narrow band of federal statutes that address procedures on execution, and those statutes are not at issue here.

Neither party has directed the Court to any cases specifically addressing whether § 1404(a) is applicable in proceedings brought pursuant to Rule 69(a). The Court's own research reveals that in other contexts, courts have found that Rule 69(a)(1) does not necessarily require the federal court to ignore its own procedures and adopt the entire procedural law of the state in post-judgment proceedings; instead, it requires adoption of the provisions of state law and procedure that are specifically related to the enforcement of judgments. *See Hilao v. Estate of Marcos*, 95 F.3d 848, 852-53 (9th Cir. 1996) ("We are of the opinion that in supplementary proceedings the Federal Rules of Civil Procedure with respect to the method of service and to the person who may make

7

the service control, rather than general provisions of state practice and procedure, prescribed by state statute, which do not deal specifically with practice and procedure in supplementary proceedings.") (quoting *Rumsey v. George E. Failing Co.*, 333 F.2d 960, 962 (10th Cir. 1964), and citing cases); *Apparel Art Int'l Inc. v. Amertex Enters., Inc.*, 48 F.3d 576, 582 (1st Cir. 1995) (the district court "must apply only those provisions of state law which specifically govern the enforcement of judgments. The district court need not follow general state procedural law.") (citing 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012 (1973)); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) ("The draftsmen of the rule, rather than design a format for supplementary proceedings—with stages, deadlines, and other forms, powers, and limitations specially adapted to the needs of such proceedings—decided (perhaps in the hope that such proceedings would rarely be necessary) to borrow the format employed in the courts of the forum state. Though authority is sparse we doubt that they meant to borrow the *entire* procedural law of the state, so that in supplementary proceedings in federal district courts in Illinois the judge would apply the Illinois rules of civil procedure and of evidence rather than the counterpart federal rules."); *Operating Eng'rs Local 139 Health Benefit Fund v. Tracks Custom Crushing, Inc.*, No. 09-C-44, 2009 WL 3754172, at *1 (E.D. Wis. Nov. 5, 2009) (applying federal law, not Wisconsin law, in deciding whether to vacate a default judgment in a Rule 69(a)(1) proceeding, because that area of law was not uniquely applicable to supplementary proceedings); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2009 WL 528902, at *1 (N.D. Ill. Mar. 2, 2009) (applying federal law to the question of whether parties in supplemental proceedings brought under Rule 69(a) and Illinois law were entitled to a jury trial).

The above cases tend to support the conclusion that because § 1404(a) is a general procedural statute and venue is not an area of law that relates specifically to enforcement of judgments, § 1404(a) is applicable in this action. Moreover, the Court has found at least two cases

in which courts *have* applied § 1404(a) to effect a transfer of venue in a case involving post-judgment proceedings under Rule 69 and state law, and the Court has found no cases reaching a contrary conclusion. *See Americananglian Envt'l. Techs., L.P. v. Doherty*, 461 F. Supp. 2d 359, 361-64 (E.D. Pa. 2006) (rejecting the argument that Rule 69 required the court to apply Pennsylvania venue rules in an action to enforce a judgment and applying 28 U.S.C. § 1404(a) to transfer the action to the Middle District of Pennsylvania; reasoning that Rule 69 provides that state law applies "except that any statute of the United States governs to the extent that it is applicable" and that federal law should apply because "questions of venue . . . are essentially procedural") (internal quotation marks and alterations omitted); *Limbright v. Hofmeister*, No. 08-12336, 2009 WL 915803, at *2, *8-*9 (E.D. Mich. Mar. 31, 2009) (applying 28 U.S.C. § 1404(a) to transfer an action to the Eastern District of Kentucky that was initiated in the Eastern District of Michigan "under Michigan Compiled Laws § 600.6104 and Michigan Court Rule § 2.621, which allows proceedings supplementary to judgment in this Court pursuant to Federal Rule of Civil Procedure 69"; applying the factors relevant to 28 U.S.C. § 1404(a); and finding that "the proper exercise of discretion calls for a transfer of the action to the United States District Court for the Eastern District of Kentucky").

Section 1404(a) is a general procedural statute, and the Court finds no Missouri law addressing venue or forum selection clauses in the specific context of enforcement of judgments

that should apply instead.[2] Thus, as in the above cases, the Court finds that § 1404(a) is applicable in this garnishment proceeding.[3]

---

[2] PNC's reliance on *Brucker v. Georgia Cas. Co.*, 14 F.2d 688, 688 (E.D. Mo. 1926), for the proposition that Missouri courts have long rejected the notion that a garnishee may seek a change in venue, is unavailing. In *Brucker*, the district court was not deciding a motion for change of venue, but was deciding whether a Missouri garnishment action was removable to federal court. In finding that it was not, the court relied on Missouri state cases finding that Missouri garnishment actions are auxiliary, rather than independent, actions. *Id.* Among the cases cited by the *Brucker* court was a Missouri case finding a change of venue was not permissible in a garnishment proceeding, because such a proceeding "is not a new suit, but an incident or an auxiliary of the judgment," and "[t]he garnishee must make his answer in the court where the execution issues, as it alone has exclusive control over its process." *State ex rel. Stevenson v. Hughes*, 115 S.W. 1069, 1069-70 (Mo. Ct. App. 1909).

   The Eighth Circuit has since noted that even though "[i]t would appear that Missouri regards garnishment as a proceeding auxiliary to the main suit," federal law controls the question of whether the garnishment proceeding is a civil action, and "the classification which the Missouri courts give garnishment proceedings is in no way binding upon [the federal court]." *Randolph v. Employers Mut. Liab. Ins. Co. of Wis.*, 260 F.2d 461, 463-64 (8th Cir. 1958). The Eighth Circuit has held that under federal law, a Missouri garnishment proceeding is a civil action that can be removed to federal court. *Id.* at 464-65.

   In light of the fact that *Hughes* was premised on the Missouri court's view that a garnishment proceeding is an auxiliary action that must be heard in the court that issued the judgment, and the fact that the Eighth Circuit does *not* follow that rule with regard to Missouri garnishment actions removed to federal court, the Court finds that neither *Hughes* nor *Brucker* is relevant here.

[3] Although the Court reaches the same ultimate conclusion as did the court in *Americananglian*, the Court is not entirely convinced by the *Americananglian* court's reasoning—that § 1404(a) applies because it is one of the "federal statute[s]" referred to in Rule 69(a). As PNC points out, the reference in Rule 69(a) to applicable federal statutes appears to be to federal statutes expressly governing execution. *See* Note of Advisory Committee on Rule 69(a) (stating, "Statutes of the United States on execution, when applicable, govern under this rule" and specifically listing several such federal statutes); *see also States Res. Corp. v. Younger*, No. 08-06041-CV-SJ-DGK, 2014 WL 912369, at *2 (W.D. Mo. Mar. 10, 2014) ("[Rule 69(a)(1)] requires compliance with the forum state's execution methods and procedures, except where the state enforcement mechanism is pre-empted by an applicable federal law. In reality, only a few federal laws exist in the judgment execution context and most are concerned only technical details relevant to specific judgments."). This Court's interpretation of the rule is simply that Rule 69(a) does not require the wholesale adoption of state rules (and rejection of federal rules) where such rules are not specifically related to execution.

### B. Cisco Is Entitled to a Transfer of Venue Pursuant to § 1404(a) and the Forum Selection Clauses in the Agreements

The Court next must evaluate whether Cisco has established that a change of venue pursuant to § 1404(a) is proper under the circumstances of this case, in light of the forum selection clauses in the Agreements. As discussed above, the Supreme Court has held that § 1404(a) is the proper mechanism by which to bring a motion to transfer venue based on a forum selection clause. *See Atl. Marine Constr. Co.* 571 U.S. at 59-60. Additionally, the Supreme Court has held that where the parties' contract contains a valid forum-selection clause, the court should not give weight to the plaintiff's choice of forum and should not consider arguments about the parties' private interests, but instead should only consider arguments about public-interest factors. *Id.* at 63-64. It has noted that because public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Neither party argues that public interest factors are relevant here, so the relevant question is whether the forum selection clauses in the agreements are valid and enforceable against PNC.

PNC does not challenge Cisco's contention that the forum selection clauses in the Agreements between MAC Meetings and Cisco are valid and would be enforceable in a dispute between MAC Meetings and Cisco. "'[F]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid.'" *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (internal quotation marks omitted).

PNC also does not challenge Cisco's contention that the forum selection clauses, by their terms, are sufficiently broad to include the claims raised in the Second Amended Exceptions. As noted above, the Services Agreement states, "The sole jurisdiction and venue for **all disputes relating to this Agreement** shall be the California State Courts for the County of Santa Clara and the U.S. Federal Courts for the Northern District of California and the parties hereby consent to

11

the jurisdiction of such courts and waive all venue objections." (Services Agreement § 16.3) (emphasis added). The Outsourcing Agreement states, "The exclusive jurisdiction and venue of **any action with respect to the subject matter of this Agreement s**hall be the state courts of the State of California for the County of Santa Clara or the United States District Court for the Northern District of California." (Outsourcing Agreement § 18) (emphasis added). The subject matter of the Agreements was Cisco's agreement to pay MAC Meetings for MAC Meetings' performance of meeting and event services and to reimburse MAC Meetings for expenses incurred in connection with the performances of such services. Each of the claims brought by PNC in the Second Amended Exceptions (Breach of Written Contract, Breach of Oral Contract, Breach of Implied Contract, Action on Account, Quantum Meruit, and Unjust Enrichment) is related to that same subject matter. Courts have applied similar language broadly and not limited it to claims for breach of a written contract. *See DesignSense, Inc. v. MRIGlobal*, No. 4:13-CV-010-DGK, 2013 WL 3205569, at *2 (W.D. Mo. June 25, 2013) (stating, "Courts read forum selection clauses using [language such as 'pertaining to'] broadly" and finding forum selection clause applied to tort claims); *Ross v. Extreme Techs., Inc.*, No. 09-0787-CV-W-SOW, 2009 WL 10671679, at *5 (W.D. Mo. Dec. 21, 2009). ("The words 'relating to' are less restrictive than 'arising out of' and indicate that a claim may be 'associated with' an agreement to be covered."). *See also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (applying forum selection clause to tort claims; noting that the facts surrounding the tort claim could also have given rise to a breach of contract claim and that "strategic or artfully drawn pleadings . . . will not work to circumvent an otherwise applicable forum selection clause"); *Cedars-Sinai Med. Ctr. v. Glob. Excel Mgmt., Inc.*, No. CV 09-3627 PSG AJWX, 2010 WL 5572079, at *6 (C.D. Cal. Mar. 19, 2010) ("[The plaintiff's] breach of implied contract and unjust enrichment claims are also covered by the forum

12

selection clause because, otherwise, any party could simply plead around a forum selection clause by alleging claims under implied contract or quasi-contract theories.").

The principal dispute in this case is whether these forum selection clauses can be enforced against PNC, which (unlike MAC Meetings) is not a party to the Agreements containing the clauses and thus did not agree to the forum selection clauses. The Court first considers whether federal law or state law applies to this dispute. The Eighth Circuit has not definitively ruled on whether federal law or state law should apply to such questions; however, it has suggested that it would likely apply federal law. *See Rainforest Cafe, Inc. v. EklecCo*, *L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) ("In this case, both parties operate under the assumption that federal law controls the question of whether this forum selection clause applies. We are inclined to agree, but acknowledge that this appears to be an open question . . .") (internal quotation marks and citation omitted); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1179 (E.D. Ark. 2019) ("The Eighth Circuit Court of Appeals 'has expressed its inclination to find that federal law governs resolution of [the enforceability of a forum selection clause] in diversity cases.'") (quoting *U.S. Bank Nat'l Ass'n v. San Bernardino Pub. Emps.' Ass'n*, No. 13-2476, 2013 WL 6243946, at *2 (D. Minn. Dec. 3, 2013)); *Elliott v. Manhattan Cryobank, Inc.*, No. 4:19-CV-00190-JAR, 2019 WL 1318565, at *2 n.1 (E.D. Mo. Mar. 22, 2019) ("The Eighth Circuit has indicated its general agreement with the proposition that in a diversity case, federal law controls whether a forum selection clause applies, *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31-32 (1988)), but it has not definitively so held and consequently the application of state or federal law appears to be an open question."); *Kleiman v. Kings Point Capital Mgmt., LLC*, No. 4:17-CV-2278-HEA, 2018 WL 3328012, at *3 (E.D. Mo. July 6, 2018) (stating that "[t]he Eighth Circuit has not definitively ruled on whether state or federal law controls when the applicability of a forum selection clause is at issue," and applying federal

law to the question of whether the forum-selection clause applies to a non-party, because the parties had relied on federal law). A majority of other circuits have held that federal law applies to questions related to the enforceability of a forum-selection clause. *See* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3803.1 (4th ed. 2016) ("A question of obvious importance in diversity of citizenship cases is what law—state or federal—shall govern on the question of whether a forum selection clause is enforceable. It seems rather clear that federal law should govern. . . . Although the Eighth Circuit appears not to have taken a position on the matter, the clear majority—including the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits—conclude that enforceability of a forum selection clause is governed by federal law. The Seventh and Tenth Circuits, in contrast, apply state law on the theory that state law governs the remaining portions of the contract.") (citing cases; footnotes omitted). This Court agrees with those courts that have found that the enforceability of a forum-selection clause presents primarily a procedural question to which federal law should apply, particularly in light of the Eighth Circuit's indication that it is inclined to agree with this approach.

Under Eighth Circuit law, a non-party may be bound by a forum-selection clause where the non-party is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Marano Enters. of Kan. v. Z–Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). "This standard does not call for a 'unity of interest' such that the third party and signatory party are 'indistinguishable.' Rather, the appropriate inquiry is whether the third party reasonably should foresee being bound by the forum selection clause because of its relationship to the cause of action and the signatory to the forum selection clause." *Kleiman v. Kings Point Capital Mgmt., LLC*, No. 4:17-CV-2278-HEA, 2018 WL 3328012, at *4 (E.D. Mo. July 6, 2018) (citing *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 230254, at *11 (E.D. Mo. Jan. 22, 2013)). "To determine whether a party is closely related to

14

the dispute, courts have looked to its common interests with the contracting party in the litigation." *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 932 (D. Minn. 2016). "Most courts have also relied on the fact that the non-contracting party voluntarily associated itself with the contracting party in some type of legal process." *Id*.

The parties have not directed the Court to any cases addressing the "closely related" standard in situations similar to those present here, nor has the Court found any. The inquiry tends to be fact-specific, with relevant considerations including whether there is a company/agent relationship between the party who signed the contact and the non-party, whether the non-party is a third-party beneficiary of the contract, whether the party and non-party share a common interest with respect to the litigation, whether the non-party is attempting to enforce rights under the contract, and whether the non-party has made a voluntary decision to participate in litigation related to the contract under circumstances where the non-party could foresee being bound.[4]

---

[4] *See, e.g., Marano*, 254 F.3d at 758 (holding that the individual plaintiff, who was a shareholder and officer of the plaintiff corporation, was bound by the forum selection clause in the corporation's agreement with the defendant; noting that the individual plaintiff had "joined with [the corporation] in bringing suit against [the defendant] under the agreements, arguably acquiescing in the forum-selection clauses within those agreements" and that "[a]s a voluntary plaintiff, he will not now be heard to object to jurisdiction limited to the venue(s) to which his co-plaintiffs agreed"); *Kleiman*, 2018 WL 3328012, at \*5 (E.D. Mo. July 6, 2018) ("A third-party beneficiary of a contract is almost certainly subject to its forum selection clause."); *In re: RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451 (SRN/HB), 2017 WL 1483374, at \*11 (D. Minn. Apr. 25, 2017) (forum selection clause was binding on individual defendants who were sole owners of company); *Medtronic*, 182 F. Supp. 3d at 932-33 (holding that new employer was not bound by forum selection clause in contract between employee and former employer in lawsuit asserting that the employee breached her employment agreement by accepting the new employment agreement and the new employer tortuously interfered with the agreement by hiring her; noting that in contrast to several cases on which the plaintiff relied, the new employer "did not voluntarily join [the employee] in any litigation"); *Hernandez v. Tex. Capital Bank, N.A.*, No. 07-0726-CV-W-ODS, 2008 WL 342758, at \*3 (W.D. Mo. Feb. 5, 2008) (holding that the plaintiffs in an FLSA case who had not signed a contract with their employer were not bound by a forum selection clause in the contract merely because some of their co-plaintiffs had signed it; emphasizing that the plaintiffs "did not sign the Agreement and they are not seeking to enforce rights under the Agreement," and therefore "they had no reason to foresee that by asserting claims under the FLSA, they would be bound by a forum selection clause contained in the employment agreements signed by [the other employees]").

After consideration of the standard and the relevant factors, the Court is persuaded that PNC is "closely related to the dispute such that it becomes foreseeable that it will be bound" by the forum selection clauses in the Agreements. *See Marano*, 254 F.3d at 757. In this garnishment proceeding, PNC has voluntarily decided to engage in litigation to enforce MAC Meetings' contractual rights under the Agreements. PNC's first claim is for "Breach of Written Contract," a claim based on PNC's assertion that Cisco breached the Agreements with MAC Meetings. PNC attached copies of the Agreements to the Second Amended Exceptions. When PNC decided to ask the Court to enforce the terms of the Agreements between MAC Meetings and Cisco, it should have been entirely foreseeable to PNC that it would be bound by the terms of those Agreements, including the forum selection clause.

In addition, PNC and MAC Meetings share a common interest in the garnishment action—demonstrating Cisco's liability to MAC Meetings. PNC is, in effect, stepping into the shoes of MAC Meetings for purposes of establishing Cisco's liability to MAC Meetings under the Agreements. Moreover, as Cisco points out, it is clear from the record that MAC Meetings is actively cooperating with PNC in this litigation by providing Cisco with information about the contractual relationship between MAC Meetings and Cisco. PNC attached to its Second Amended Exceptions an affidavit from James J. Lindsay, who is a member and manager of MAC Meetings and who states in the affidavit that he is authorized to make the affidavit as a member and manager of MAC Meetings. (Ex. A. to Second Am. Exceptions, Affidavit of James J. Lindsay (Nov. 27, 2019)). Mr. Lindsay states that the copies of the Agreements attached to the Second Amended Exceptions are true and complete copies of those Agreements and that he has reviewed several allegations in the Second Amended Exceptions and confirms that they are true, accurate, and complete. Earlier in the case, Mr. Lindsay submitted two other affidavits in support of filings made

by PNC, each of which addressed the MAC Meetings/Cisco relationship, the money allegedly owed to MAC Meetings, and the attempts MAC Meetings has previously made to collect that money. (Doc. 20-1, Affidavit of James J. Lindsay (May 30, 2019); Doc. 29-1, Affidavit of James J. Lindsay (Aug. 7, 2019)). Additionally, Cisco states that PNC must be obtaining information from MAC Meetings, because the Services Agreement attached to PNC's Second Amended Exceptions is confidential and not publicly available; Cisco notes that the Services Agreement provides that "Neither party shall disclose the terms and conditions of this Agreement to third parties . . . without prior written consent of the other party . . . ." (Services Agreement, § 16.8). PNC does dispute this assertion. It is clear that for purposes of the instant garnishment action, PNC and MAC Meetings are working together toward their common interest in finding Cisco liable under the Agreements.

In light of the fact that PNC has voluntarily undertaken to engage in litigation attempting to enforce MAC Meetings' rights under the Agreements containing the forum selection clauses, the fact that PNC and MAC Meetings share a common interest in establishing Cisco's liability to MAC Meetings under the Agreements, and the fact that Cisco and MAC Meetings appear to be cooperating to advance that common interest, the Court finds the "closely related" standard has been met here. The Court further notes that this conclusion is consistent with principles of fairness. Cisco should not be deprived of one of the contractual benefits it bargained for—a California forum—merely because the entity that actually brought suit to enforce the Agreements happens to be a third-party garnishor rather than the original contracting party.

The Court finds the cases relied on by PNC unpersuasive, both because they are factually distinguishable and because they rely on state, rather than federal law. PNC relies principally on two cases: *Baisch & Skinner, Inc., v. Bair*, 507 S.W.3d 627 (Mo. Ct. App. 2016) (applying Missouri law), and *United States v. Harkins Builders*, 45 F.3d 830 (4th Cir. 1995) (applying Virginia law).

17

In *Baisch*, a garnishor obtained a judgment against the defendant and then served a Missouri court's garnishment order on the defendant's bank, ordering the bank to withhold funds from the account for the entire period of the garnishment until the judgment was satisfied. 507 S.W.3d at 630. The deposit agreement between the defendant and the garnishee bank had an Illinois choice of law provision. *Id.* at 631. Under Illinois law, a garnishee bank is only required to withhold the amounts deposited as of the day of service of the garnishment. *Id.* The garnishee bank failed to follow the order of the Missouri court and instead followed Illinois law. *Id.* at 630. In deciding whether the garnishor was bound by the Illinois choice of law provision, the court noted that "[i]n order for a party to be bound by a contract a court must find there was privity of contract," a doctrine that "means that a person cannot acquire rights or be subject to liabilities *arising under* a contract to which he is not a party." *Id.* at 632 (internal quotation marks omitted). The court found that "[a] garnishment action alone does not create a privity of contract between a garnishee and a garnishor." *Id.* It concluded that "the choice of law clause in the deposit agreement is not binding upon [the garnishor] because privity of contract did not exist, as [the garnishor] was not a party to the agreement." *Id.*

Even assuming, *arguendo,* that *Baisch* has relevance in this § 1404(a) case, in which federal law applies, the Court finds it distinguishable. In *Baisch*, unlike the present case, the garnishor was not attempting to bring claims to enforce any rights created by the defendant's contract with the garnishee. Instead, it sought only to obtain property of the defendant that was (or was soon to be) indisputably in the possession of the garnishee. Thus, the court in *Baisch* did not have occasion to decide whether a garnishor would be permitted to bring an action to enforce particular terms of a contract while denying that it was bound by other terms in the same contract.

The facts of *Harkins Builders* are more similar to those in the present case. In *Harkins Builders*, a garnishor initiated a proceeding against a garnishee to attach monies owed by the garnishee to the judgment debtor under a contract between them. 45 F.3d at 832. The garnishee

admitted to owing money to the judgment debtor, but it argued that the amount should be reduced by setoffs allegedly owed by the judgment debtor to the garnishee pursuant to the contract. *Id.* The garnishee also argued that the dispute over the amount owed should be resolved through arbitration, pursuant to an arbitration clause in the contract. *Id.* Applying Virginia law, the Fourth Circuit held that the arbitration provision was not binding on the garnishor. *Id.* at 834-35. The court reasoned that the garnishor was "a stranger to the contract" and rejected the argument that the garnishor "stands in the shoes of the judgment debtor." *Id.* at 834. It stated, "Following this line of reasoning to an extreme, the [garnishor] could thus argue that it was entitled to assume the judgment debtor's obligations and perform the contract, to earn money that the judgment debtor would otherwise have been entitled to earn." *Id.* The court also found that this would "distort[] the role of garnishment, which is simply to enforce a judgment against property of the judgment debtor in the hands of a third person. *Id.* It also found that on the facts before it, there were other reasons disfavoring enforcement of the arbitration clause, including judicial economy. *Id.*

Although *Harkins Builders* does provide some support PNC's position, the Court is not persuaded that it should be followed here. First, the Court in *Harkins Builders* was applying Virginia law, which certainly does not apply here. Second, because *Harkins Builders* involved an arbitration clause rather than a forum selection clause, the court in that case did not have occasion to consider the body of law governing when parties are to be considered "closely related" for purposes of determining whether a forum selection clause is enforceable against a third party. Third, as at least one other federal court has, this Court finds the reasoning of the dissenting judge in *Harkins Builders* more persuasive than that of the majority.

The dissenting judge in *Harkins Builders* noted that although the garnishor does not "step into the shoes" of the judgment debtor for all purposes, it "*does* step into the debtor's shoes for purposes of calculating the value of the debtor's property in the hands of the garnishee." 45 F.3d at 836 (Phillips, J., dissenting). Judge Phillips then found that to decide whether the garnishor

should be bound by the arbitration provision, the Court should look to underlying policy concerns. *Id.* Judge Phillips found the equities were "overwhelmingly in favor" of holding the garnishor subject to the arbitration provision, stating:

> An arbitration provision, after all, confers a substantial contractual right for which a party often gives valuable consideration. It seems unfair that a garnishee should be stripped of her contractual right to demand arbitration on the mere happenstance that the person asserting contractual rights against her is a nonparty whose interest arises only by virtue of the misfeasance of the garnishee's creditor. On the other hand, there is no unfairness of which the garnishing judgment creditor can complain if the contract between garnishee and judgment debtor is construed to require him to arbitrate disputes regarding the value of the property the garnishee owes the debtor. To be sure, the garnishor might prefer not to be bound by such an arbitration provision, but he will just as likely prefer not to be bound by other "substantive" provisions of the contract—for example, a clause that permits the garnishee to deduct attorneys fees incurred in defense of a garnishment proceeding brought to recover monies owed on the contract. There is no qualitative difference between the two that makes imposition of the former inequitable while imposition of the latter remains equitable, indeed transparently so.

*Id.* at 837. *See also Benson v. Casa De Capri Enters. LLC*, No. CV-18-00006-PHX-DWL, 2019 WL 3430159, at *5-*6 (D. Ariz. July 30, 2019) (applying Arizona law) (finding the dissent in *Harkins Builders* more persuasive than the majority and enforcing an arbitration clause against garnishors who were not parties to the contract; stating, "Although [the garnishors] did not receive a formal assignment from [the defendant/judgment debtor] with respect to their garnishment claim (which would seemingly be impossible), they are nonetheless exploiting the agreement to claim its benefits and asserting rights under the policy while at the same time seeking to avoid its binding terms") (internal quotation marks and citations omitted).

Here, like the dissenting judge in *Harkins Builders*, the Court finds it fundamentally unfair to permit PNC to assert MAC Meetings' contractual rights against Cisco, yet deprive Cisco of the benefit of the forum selection clauses in its contracts merely "on the mere happenstance that the person asserting contractual rights against [it] is a nonparty whose interest arises only by virtue of the misfeasance of the garnishee's creditor." 45 F.3d at 837 (Phillips, J., dissenting).

For all of the above reasons, the Court finds that the forum selection clauses in the Agreements are binding on PNC in this garnishment action.

### C. PNC's Garnishment Claims Should Be Severed From the Rest of This Action

PNC also argues that transfer under § 1404(a) is inappropriate here, because § 1404(a) contemplates transfer only of an entire "civil action," and that it would be unfair to transfer this entire "civil action," including the consent judgment and any other potential garnishment claims PNC might have against other parties. In response, Cisco suggests that the Court should sever the garnishment proceeding from the rest of the action under Federal Rule of Civil Procedure 21, thereby creating a new civil action, and then transfer that new civil action to the Northern District of California. The Court agrees with PNC that § 1404(a) contemplates only the transfer of an entire civil action, and that there is no basis on which to transfer this entire civil action, including the consent judgment and any other potential garnishment claims PNC might have. However, the Court also agrees with Cisco that severance under Rule 21 is appropriate so that the garnishment action may be transferred.

Rule 21 provides, in relevant part, that "The court may . . . sever any claim against a party." Fed. R. Civ. P. 21. "Severance under Rule 21 is committed to the Court's sound discretion, and in exercising that discretion, courts typically consider the same general factors elucidating the § 1404(a) analysis . . ." *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (internal citation omitted). Where a court is confronted with a confronted with a forum selection clause that applies to some, but not all, of the claims in an action, the Court may sever those claims from the others, create a new civil action, and transferred the new civil action pursuant to 28 U.S.C. § 1404(a). *See Valspar*, 15 F. Supp. 3d at 931, 935 (severing plaintiffs' claims against different defendants into two actions based on different forum selection clauses and

transferring each action to a different court); *Hernandez v. Tex. Capital Bank, N.A.*, No. 07-0726-CV-W-ODS, 2008 WL 342758, at *4 (W.D. Mo. Feb. 5, 2008) (severing claims and transferring only some of the claims where one group of plaintiffs were bound by a forum selection clause and the rest were not). The Court finds that PNC's garnishment proceedings against Cisco should be severed from the rest of this case and that the new action should be transferred.

### D. PNC Did Not Waive Its Right to Request a Transfer of Venue by Consenting to the Jurisdiction of the Undersigned

PNC's final argument is that Cisco waived its right to demand a transfer of venue by signing and submitting its Notice Regarding Magistrate Judge Jurisdiction, consenting to have the undersigned "conduct any and all proceedings in this case, including trial and entry of final judgment." PNC cites no cases to support this assertion, and the Court finds it to be without merit. "[A] defendant does not waive the right to request a transfer of venue under 28 U.S.C. § 1404(a) by consenting to the jurisdiction of a magistrate judge to decide the case." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (granting a motion to transfer venue and rejecting the plaintiff's argument that the defendants had waived the right to request a transfer by consenting the jurisdiction of the magistrate judge; stating, "[t]he parties have only consented that a magistrate judge, not a district judge, will decide all motions brought before the court-including this motion to transfer venue"). *Accord Jones Real Estate, Inc. v. Avatel Techs., Inc.*, No. 17-23933-CIV, 2018 WL 1121537, at *7 (S.D. Fla. Mar. 1, 2018).

### IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that PNC Bank's garnishment claims against Cisco Systems, Inc. are **SEVERED** from the rest of this action. The Clerk of the Court is directed to establish a new docket number for the resulting case, to docket this Memorandum and Order as the first entry in the newly created case, and to attach all documents filed in this case up to the date of this

Memorandum and Order to that first docket entry. The plaintiff in the newly created case is PNC Bank, National Association. The defendant in the newly created case is Cisco Systems, Inc.

**IT IS FURTHER ORDERED** that Cisco Systems, Inc.'s Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Doc. 45) is **GRANTED**, and the newly created case is **TRANSFERRED** to the United States District Court for the Northern District of California.


_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of July, 2020.